## HALL v. THE SELMA AND TENNESSEE RAIL ROAD COMPANY.

1. The opinion of one of the commissioners appointed by an act of incorporation to receive subscriptions for stock, that a subscriber might forfeit his stock by failing to pay an assessment thereon, can have no influence upon the liability of the lat-

ter; and in an action brought for the recovery of an assessment is irrelevant testimony.

2. In an action against a stockholder for his subscription, he cannot object that the directors of the company had released other stockholders; if the release was under a power it would be valid, if otherwise merely void.

3. Where the charter of a company appoints commissioners and directs books of subscription to be opened at certain places, but also directs that upon default of payment of stockholders, their stock shall be sold, and books opened to supply the deficiency; a subscriber under this latter provision cannot object to pay for his stock, because he subsbribed for the same at a place where the books were not required to be originally opened.

4. Where an act of incorporation requires five *per cent.* upon stock to be paid at the time of subscription, if the subscriber does not then pay it, but a judgment is afterwards rendered against him therefor, which he satisfies, he cannot object to a suit brought for other assessments, that he did not pay the five *per cent.* in cash when he subsribed.

WRIT of error to the Circuit Court of Dallas.

This was an action of assumpsit by the defendant in error against the plaintiff, to recover the sum of one hundred dollars, with interest, being the amount of two instalments of five per cent. each, upon one thousand dollars of the stock of the company previously subscribed for.

The cause was tried upon issues to the pleas of *non-assumpsit, nul tiel* corporation, fraud, &c. A verdict was returned for the plaintiff for the sum claimed, and a judgment was rendered accordingly. On the trial, the defendant excepted to the ruling of the court. From the bill of exceptions, it appears that the defendant offered to prove by Hugh Ferguson, one of the commissioners appointed by the act incorporating the company, to open books for subscriptions for stock, that he, the witness, had expressed the opinion very frequently, in the community, with a view to obtain subscribers, that a stockholder could relinquish his stock by failing to pay an assessment thereon for ninety days. There was no attempt to show that the defendant was aware of the witness' opinion, and the court excluded his evidence.

The defendant proposed to prove by the testimony of the same witness, who was also the secretary of the company, and by the books of the company, that the directors of the corporation, by resolution passed before the institution of this suit, had given to the large stockholders the right to relinquish some of their stock,

of which some of them had availed themselves; but that right had been denied to those who owned no more stock than the defendant. This evidence was also excluded, the court believing the resolution of the directors to be unauthorised and void.

It was then shown that the commissioners had opened books of subscription, stock had been subscribed for, the company had organized by electing a board of directors, and made some contracts for doing work on the road; and more than five per cent. on the subscriptions had been paid. But the entire capital stock had not been sold. The defendant subscribed for ten shares of stock at Burnsville, in Dallas, on the 17th March, 1837, in the same subscription book that was used at Selma, and was then in the possession of one of the commissioners who was then at Burnsville, for the purpose of receiving subscriptions under an authority from the Directors.

The defendant did not pay five per cent. upon the shares subscribed for, at the time of his subscription; but he had since paid it in satisfaction of a judgment that had been rendered against him, upon a suit brought for its recovery—whether that suit had been defended or not, the evidence did not show.

Upon this evidence, the court charged the jury, that if the defendant did not pay five per cent. upon the shares taken by him, simultaneously with his subscription, and had done no act that recognized him as a corporator, the plaintiff could not recover.— But if he had since paid that amunt voluntarily, or after judgment, he would be estopped from denying that he was a corporator. *Further*, the directors had no right to direct books of subscription to be opened at Burnsville or elsewhere; unless after a sale of delinquent stockholders shares, to supply a deficiency occasioned by such sale; and if the defendant subscribed for stock when the books were opened by the authority of the directors, under any other circumstances, his subscription would not be binding upon him. But if the defendant afterwards paid the five per cent. voluntarily, or after suit brought, and the plaintiff had assented to, or accepted the subscription, it wonld then be binding on the defendant.

G. W. GAYLE, for the plaintiff in error insisted upon each of the points raised upon the bill of exceptions, as showing that the law of the case had not been correctly determined by the circuit

court. He cited the act of incorporation of 1837, § 17, 20; 2 Stew't Rep. 38; 9 Porter's Rep. 633; 8 Serg't & Rawle's Rep. 219; 13 id. 256; 1 Caine's Rep. 391; Dissenting op. of Lewis, J.

C. G. EDWARDS, for the defendant, was stopped by the court upon the points arising on the rejection of the evidence. He denied that the defendant could urge the non-payment of five per cent. at the time of his subscription; the more especially as the company had organized before he subscribed. But if the cash payment was an indispensable condition to the validity of the subscription, the subsequent payment, whether voluntary or not, confirms the contract for stock between the plaintiff and defendant, and obliges the defendant to pay for it *in toto*. [See the Selma and Tennessee R. R. Co. v. Tipton, 5 Ala. Rep. and cases there cited.]

COLLIER, C. J.—In respect to the declaration by one of the commissioners, that it would be allowable for the subscribers to forfeit their stock, by failing to pay an assessment thereon, no matter for what purpose made, can have no influence in determining the validity of the defendant's contract with the company.— The opinion of one of the commissioners upon a question of law, would not be authoritative, or in any manner affect the rights and liabilities of the corporation, or either of its members. And it would, therefore, be unimportant, whether it was communicated to the defendant previous to his subscribing.

If the directors of the company, either with or without authority, released the larger stockholders from the payment of a part of their stock, such an act cannot discharge the defendant from the payment of his stock, either in whole or in part. If such a release was made in virtue of a legal power, it could not be objected to, and if without authority, it would be merely void.

The second section of the charter directs, that books shall be opened at Selma under the superintendence of the commissioners, or a majority of them, and so continue, until the entire amount of the stock authorised to be sold, shall be subscribed. By the seventeenth section, it is provided, that upon a forfeiture of stock for a failure to pay an instalment required thereon, a new subscription may be opened to make up such deficiency as may be caused by the default: *Provided*, that the president and directors may offer for sale the stock of any defaulting stockholder, or so much there-

of as may be necessary to pay his defalcation, after giving twenty days notice of the time and place of sale, and out of the proceeds, first pay what is due to the company, and the residue, if any, shall be paid to the defaulting stockholder. Under this section, we think the directors in obtaining subscriptions, were not restricted to Selma, but might have received subscriptions elsewhere. And even if the act contemplated Selma as the only place at which stock should be subscribed, is it by any means certain, that it should not thus far be considered as directory, so as to prevent one who had become a corporator, from avoiding the payment for stock, by showing that his subscription was made at some other place? As it is unnecessary in the present case, we decline examining this question.

In Tipton v. The Selma and Tennessee R. R. Co. [5 Ala. Rep.] we said "not only estoppels technically so called, but estoppels *in pais*, operate both for and against corporations; and it may be laid down generally, that a party may be concluded from denying his own acts or admissions, which were expressly designed to influence the conduct of another, and did so influence it; and when such denial will operate to the injury of the latter." It was also held that the participation of Tipton "in the organization of the company, his assent to treat it as a corporation, as indicated thereby, and still more strongly by his note given for the five per cent. and the acceptance of a place in the directory, all seem to show that he regarded the plaintiff as a corporation, liable to all burthens and entitled to all privileges which the charter provided." In that case, the subscription was made previous to the organization of the company which the statute contemplated. Here the organization was complete, and the corporation had moved in the execution of the purpose for which it was created, so that there is no objection to the competency of the plaintiff to contract and coerce a compliance by suit.

Without pretending to express a decisive opinion, we would remark, that we cannot very well perceive a difference in principle, between a payment of the five per cent. made voluntarily at a time subsequent to the subscription, and a payment under legal coercion after defence made. In the former case, the subscriber for stock cannot set up his own neglect to pay with promptness, the sum directed by the charter to be paid in cash; because, if indispensable to entitle him to the subscription, the sub-

sequent payment and acceptance, will give to the contract validity, as between the company and the stockholder. And in the latter case, the fair intendment must be, either that the law was in favor of the company, or the defendant acquiesced in the judgment; in either event, the payment would be made, and the subscriber entitled to the stock upon meeting such farther requisitions as might be made on him. Under such circumstances would it not be incumbent on him to repudiate the contract if its performance was not obligatory, without awaiting not only a call, but a suit for further instalments?

In the present case, we think that as the payment was made upon a judgment recovered in a suit, to which no resistance was made, the defendant must be taken to have conceded his liability; and to have voluntarily paid the five per cent. We have not thought it necessary to inquire, whether where subscriptions were made after the organization of the company, or to supply deficiencies of defaulting stockholders, the charter requires a payment to be made at the time of subscribing; or whether in any case, a compliance with that requisition is indispensable to the contract. These are questions with others hinted at, but not decided, which we purposely waive.

The consequence is, that the judgment of the circuit court is affirmed.